Dismissed in Part; Affirmed in Part; Reversed and
Remanded in Part; and Substitute Memorandum Opinion filed March 16, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-01098-CV

___________________

 

James W. Davis, THOMAS
B.WILKINSON, IV, KET ENTERPRISES, INCORPORATED, and MELISSA JONES, Appellants

 

V.

 

Scott Friedson, and NIP REAL
ESTATE L.L.C. d/b/a NATIONAL INCOME PROPERTY, Appellees



 



 

On
Appeal from the 80th District Court

Harris County,
Texas



Trial Court Cause No. 2005-81808

 



 

 

SUBSTITUTE MEMORANDUM OPINION

Our memorandum opinion of March 11,
2010 is withdrawn, and the following substitute memorandum opinion is issued in
its place.

This case arises from a dispute involving a real estate
broker’s commission.  Scott Friedson and NIP Real Estate L.L.C. d/b/a National
Income Property (“National Income Property”) challenge the trial court’s (1) order
granting James Davis’s motion for partial summary judgment on Friedson’s breach
of contract and fraud claims; and (2) denial of Friedson’s motion for
continuance.[1] 
 

Davis appeals the trial court’s (1) dismissal of
certain counterclaims without prejudice for want of prosecution;[2] and (2) denial of
his motion to reinstate.  

We dismiss in part; affirm in part; and reverse and
remand in part.

Background

Friedson is a real estate broker with National Income
Property.  He alleges that Davis entered a Commercial Buyer/Tenant
Representation Agreement with him and National Income Property.  Friedson and
Davis both signed the agreement.  According to Friedson, this agreement gave
Friedson and National Income Property the exclusive right to act as Davis’s
real estate agent and to receive a broker’s fee when Davis purchased the Woodlen
Place property in Houston.  Davis eventually bought the Woodlen Place property
directly from KET Enterprises, Inc., a real estate brokerage firm, and Thomas
B. Wilkinson IV, the owner’s listing broker.  

Davis denies that he and Friedson entered an
agreement.  Davis contends that he added a handwritten notation to the
agreement stating that Friedson would look only to the seller for his
commission; Davis further contends that this notation amounted to a
counteroffer, which Friedson did not accept.  Friedson asserts that he accepted
the agreement including the notation, and that Davis nonetheless is obligated
to pay Friedson’s commission under a default provision in the agreement.  

Friedson filed an original petition on December 29,
2005 asserting claims against Davis for breach of contract, fraud and
fraudulent inducement, and attorneys’ fees.  Davis filed a general denial; a
verified denial claiming Friedson did not have the capacity to sue; several
affirmative defenses; and a counterclaim seeking a declaratory judgment that
the parties never had a meeting of the minds or, alternatively, that the
agreement was void and unenforceable.  

On April 29, 2008, Davis filed a combined no-evidence
and traditional summary judgment motion.  In the no-evidence portion of the
combined motion, Davis asserted that Friedson lacked evidence of (1) a binding
agreement for Davis to pay a real estate commission to Friedson; and (2) a breach
of any such agreement because Davis did not agree to pay Friedson a commission,
and Friedson agreed to look solely to the seller for his commission.  In the
traditional summary judgment portion of the motion, Davis contended that the
agreement did not comply with the Real Estate License Act; there was no meeting
of the minds on a material term; and there is no cause of action for fraud
absent an enforceable agreement.  On May 15, 2008, Friedson filed a motion for
continuance of the summary judgment hearing and trial date, along with a motion
for leave to file an amended complaint and reopen discovery; Friedson contended
that he hired new counsel on May 14, 2008 and needed additional time to prepare
for the case.  The trial court denied Friedson’s motion for continuance on May
23, 2008.  

Friedson filed a response to Davis’s motion for
summary judgment on May 19, 2008, arguing that a valid written agreement existed
between the parties; the agreement satisfied the Real Estate License Act’s requirements
for bringing suit to collect commissions; the parties acted under the
agreement; and Davis’s added term was of no consequence because Davis agreed to
pay Friedson’s commission in the event of default.  Friedson also asserted that
Davis committed fraud by allowing Friedson to represent him and then purchasing
the property directly from the selling broker.  

Friedson filed a first amended petition on June 5,
2008 adding National Income Property as a plaintiff, and Thomas B. Wilkinson,
IV, KET Enterprises Inc., and Melissa Jones as defendants.  The first amended
petition added claims for tortious interference with contract against
Wilkinson, KET, and Jones, and claims against all defendants for conspiracy and
violations of the Theft Liability Act.  

On June 13, 2008, the trial court signed an
interlocutory order granting Davis’s April 29, 2008 motion for summary judgment
in its entirety.  The order was interlocutory because (1) Davis’s April 29,
2008 motion for summary judgment did not address Friedson’s newly added claims
in his June 5, 2008 first amended petition; and (2) the order did not address
Davis’s declaratory judgment counterclaim.  

On June 17, 2008, Friedson filed a motion for summary
judgment on Davis’s declaratory judgment counterclaim.  On August 1, 2008,
Davis filed his first amended original answer and first amended counterclaim, in
which he added a claim against Friedson under the Texas Deceptive Trade Practices-Consumer
Protection Act along with claims for common law fraud, fraud in a real estate
transaction, breach of contract, and attorney’s fees.  Davis simultaneously
filed his response to Friedson’s June 17, 2008 motion for summary judgment.  On
August 26, 2008, the trial court signed an order granting Friedson’s motion for
summary judgment and dismissing Davis’s declaratory judgment counterclaim.

Other claims were resolved independently of the
cross-motions for summary judgment.  In a letter dated June 24, 2008, the trial
court stated that it intended to dismiss the case for want of prosecution
because no service had been had or no answer had been filed in the case.  The
letter was addressed only to Friedson’s attorney; the body of the letter was
directed to “All Counsel and Pro Se parties.”  The letter stated that the case
would be dismissed for want of prosecution unless a meritorious default
judgment was filed and heard or an answer was filed.  If neither occurred, the
trial court required the filing of a verified motion to retain showing good
cause or diligence in prosecution, along with an appearance at a dismissal
hearing scheduled for September 5, 2008.   

On September 9, 2008, the trial court signed an order
dismissing “the cause of action” for want of prosecution after the parties
failed to appear at the September 5 dismissal hearing.  It is not clear from
the order exactly what “the cause of action” encompasses.  

On October 2, 2008, Davis timely filed a verified
motion to reinstate his counterclaims after dismissal for want of prosecution
under Texas Rule of Civil Procedure 165a, in which he stated that (1) he did
not have notice of the dismissal docket setting or order dismissing the case
until September 19, 2008; and (2) unspecified new claims had arisen in relation
to his counterclaims against Friedson.  On October 13, 2008, Friedson filed a
response and motion for sanctions, and a motion for rehearing of Davis’s second
motion for summary judgment subject to reinstatement of the case.  The trial
court denied the motion to reinstate.[3] 


On November 4, 2008, Davis filed a motion asking the
trial court to sign a final judgment.  On November 14, 2008, the trial court
signed a “Final Judgment” denying Davis’s motion to reinstate and incorporating
(1) the June 13, 2008 summary judgment order dismissing Friedson’s claims for
breach of contract and fraud; and (2) the August 26, 2008 summary judgment
order dismissing Davis’s declaratory judgment counterclaim.  The “Final
Judgment” recited that all remaining claims or counterclaims were dismissed for
want of prosecution in the order signed on September 9, 2008.

            As of November
14, 2008, therefore, all of the parties’ claims had been resolved as follows.

•        
Friedson’s claims against Davis for breach of contract and fraud were
resolved when the trial court granted summary judgment in favor of Davis in an interlocutory
order signed June 13, 2008.  The June 13, 2008 summary judgment order was
incorporated in the “Final Judgment” signed on November 14, 2008.

•        
Davis’s declaratory judgment counterclaim against Friedson was resolved
when the trial court granted summary judgment in favor of Friedson in an interlocutory
order signed August 26, 2008.  The August 26, 2008 summary judgment order was
incorporated in the “Final Judgment” signed on November 14, 2008.

•  The
November 14, 2008 “Final Judgment” recites that “all other claims or
counterclaims, if any, remaining after the prior above mentioned Interlocutory
Summary Judgment Orders were granted, were dismissed for want of prosecution on
September 9, 2008.”  This recitation disposed of Friedson’s and National Income
Property’s remaining claims for tortious interference against Wilkinson, KET,
and Jones; it also disposed of Friedson’s and National Income Property’s claims
for conspiracy and violations of the Theft Liability Act against Davis,
Wilkinson, KET, and Jones, along with National Income Property’s fraud and
breach of contract claims against Davis.  Likewise, this recitation disposed of
Davis’s remaining counterclaims against Friedson for DTPA violations, common
law fraud, fraud in a real estate transaction, breach of contract, and
attorney’s fees.

•        
The November 14, 2008 “Final Judgment” is final and appealable because
it confirms the trial court’s intent to resolve all claims asserted by or
against all parties when it states, “This judgment finally disposes of all
remaining claims and parties, if any.”  See Lehmann v. Har-Con Corp., 39
S.W.3d 191, 200 (Tex. 2001).     

A notice of appeal was filed on December 1, 2008 by Davis,
Wilkinson, KET, and Jones.  Friedson filed a notice of appeal on December 2,
2008.  The notices of appeal filed on December 1 and December 2, 2008 were
timely regardless of whether the date of the final judgment is deemed to be
September 9, 2008 (when the ambiguous order dismissing “the cause of action”
for want of prosecution was signed) or November 14, 2008 (when the document
denominated as the “Final Judgment” was signed).  After the September 9, 2008
dismissal order was signed, Davis timely filed a motion to reinstate on October
2, 2008.  The filing of this motion to reinstate extended the time for Davis to
file a notice of appeal until December 8, 2008.  See Tex. R. App. P.
26.1(a)(3).  If November 14, 2008 is deemed to be the operative date, then
Davis had until December 15, 2008 to file his notice of appeal.  See Tex.
R. App. P. 26.1.  Davis’s notice of appeal filed on December 1, 2008 was timely
regardless of which deadline applies.  Because Davis timely filed his notice of
appeal on December 1, 2008, Friedson’s notice of appeal filed on December 2,
2008 also was timely.  See Tex. R. App. P. 26.1(d).  Friedson filed a
motion to amend his notice of appeal to add National Income Property, which was
granted.[4] 


Analysis

A.               
Summary Judgment on Friedson’s Claims for Breach of Contract and   Fraud
Against Davis 

 

In his first issue, Friedson contends the trial court
erred by granting Davis’s motion for partial summary judgment on Friedson’s
breach of contract claim because Friedson presented some evidence that (1) he
accepted Davis’s changes to the agreement; (2) Davis breached the agreement by
buying the property without Friedson’s assistance; and (3) the written
agreement complied with the Real Estate License Act.  Friedson also argues the
trial court erred by granting summary judgment on his fraud claim because the
written agreement complied with the Real Estate License Act.  

1.         No-Evidence Motion for Summary Judgment

Davis sought a no-evidence motion for summary
judgment with respect to (1) the existence of a contract; and (2) breach of the
asserted contract.

The movant must specifically state the elements as to
which there is no evidence.  Walker v. Thomasson Lumber Co., 203 S.W.3d
470, 473-74 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  The trial court
must grant the motion unless the respondent produces summary judgment evidence
raising a genuine issue of material fact.  Tex. R. Civ. P. 166a(i).  However,
the respondent is “not required to marshal its proof; its response need only
point out evidence that raises a fact issue on the challenged elements.”  Hamilton
v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008) (quoting Tex. R. Civ. P. 166a(i)
cmt. 1997).

A no-evidence summary judgment is essentially a
pretrial directed verdict, and we apply the same legal sufficiency standard in
reviewing a no-evidence summary judgment as we apply in reviewing a directed
verdict.  Mathis v. Restoration Builders, Inc., 231 S.W.3d 47, 50 (Tex.
App.—Houston [14th Dist.] 2007, no pet.)(maj. op.).  We review the entire
record in the light most favorable to the non-movant, indulging every
reasonable inference and resolving any doubts against the motion.  City of
Keller v. Wilson, 168 S.W.3d 802, 824 (Tex. 2005).  

We sustain a no-evidence summary judgment when (1)
there is a complete absence of proof of a vital fact; (2) rules of law or
evidence bar the court from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
scintilla; or (4) the evidence conclusively establishes the opposite of a vital
fact.  Walker, 203 S.W.3d at 474.  Less than a scintilla of evidence
exists when the evidence offered to prove a vital fact is so weak as to do no
more than create a mere surmise or suspicion of its existence, and in legal effect
is no evidence.  Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex.
2004).  More than a scintilla of evidence exists when the evidence rises to a
level that would enable reasonable and fair-minded people to differ in their
conclusions as to the existence of the vital fact.  Id.

a.         Existence of a
valid contract

The essential elements of a breach of contract claim
are (1) the existence of a valid contract, (2) the plaintiff performed or
tendered performance, (3) the defendant breached the contract, and (4) the
plaintiff was damaged as a result of the breach.  Winchek v. Am. Express
Travel Related Servs. Co., 232 S.W.3d 197, 202 (Tex. App.—Houston [1st
Dist.] 2007, no pet.).  Parties form a binding contract when there is (1) an
offer, (2) an acceptance in strict compliance with the terms of the offer, (3)
a meeting of the minds, (4) consent by each party to the terms, and (5)
execution and delivery of the contract with the intent that it be mutual and
binding.  Wal-Mart Stores, Inc. v. Lopez, 93 S.W.3d 548, 555-56 (Tex.
App.—Houston [14th Dist.] 2002, no pet.).  For an agreement to be enforceable,
there must be a meeting of the minds with respect to its subject matter and
essential terms.  Id. at 556.  A “meeting of the minds” is a mutual
understanding and assent to the expression of the parties’ agreement.  See
Weynand v. Weynand, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999, pet.
denied).  To determine whether there was an offer and acceptance, and therefore
a “meeting of the minds,” courts use an objective standard; they consider what
the parties did and said, not the parties’ subjective states of mind.  See
Komet v. Graves, 40 S.W.3d 596, 601 (Tex. App.—San Antonio 2001, no pet.). 


Davis challenged the existence of a valid contract in
his motion for summary judgment, arguing there was no meeting of the minds that
Davis would be responsible for Friedson’s commission because Davis made a
handwritten notation that Friedson would look to the seller for his
commission.  Davis contended that the handwritten notation amounted to a
counteroffer that Friedson did not accept.  If Friedson accepted the notation,
Davis argued that he was not contractually obligated to pay Friedson’s
commission.  The copy of the agreement attached to Friedson’s original petition
and Davis’s motion for summary judgment contains the handwritten notation,
Davis’s initials next to the notation, and both parties’ initials at the bottom
of each page.  Signatures for Friedson and Davis appear at the end of the
document. 

In response, Friedson argued that there was a valid
written agreement between the parties.  He contended that even though he did
not specifically initial the language added by Davis, he initialed at the
bottom of the page, signed the agreement, and then performed under the contract. 
Friedson attached his affidavit, a letter of intent to purchase the Woodlen
Place property, and an unsigned copy of the agreement at issue.[5]

According to Friedson’s affidavit, he signed the
agreement faxed by Davis, which included the handwritten notation stating that
the broker would receive payment directly from the seller.  Friedson stated
that he called the listing brokers, KET and Houston Income Properties, to
verify the co-broker fee; he told Davis that KET agreed to pay the commission,
and that they would work out the details in the earnest money contract. 
Friedson also attached to the response an unsigned letter of intent to KET
outlining Davis’s offer, which he stated he faxed to KET.  The letter of intent
indicated that the seller was to pay Friedson’s commission.  Friedson stated in
his affidavit that after the agreement between Friedson and Davis was signed,
Friedson called to arrange a tour of the property for Davis and they exchanged
emails to arrange a time for doing so.  Friedson said he received a call from Jones,
Davis’s girlfriend and business partner, in which she stated she was upset that
Friedson had another potential buyer looking at the property; she insisted
Friedson close the deal for Davis and Jones.  Friedson assured her he would do
everything he could.  According to Friedson’s affidavit, Friedson did not speak
to Davis again before the showing and Davis did not attend the scheduled tour
of the property.  

On this record, Friedson has produced summary
judgment evidence raising a genuine issue of material fact as to whether the
parties had an agreement.  See Insignia Capital Advisors, Inc. v.
Stockbridge Corp., No. 05-99-01126-CV, 2000 WL 267495, at *2-3 (Tex.
App.—Dallas 2000, no pet.) (not designated for publication) (genuine issue of
material fact existed as to whether parties formed contract in broker sharing
deal when Robertson faxed agreement to DuPree, DuPree made handwritten changes
and faxed back, and there was evidence that Robertson had signed after DuPree’s
fax).  We hold that a no-evidence motion for summary judgment could not be
predicated on the absence of evidence of the existence of a valid contract.

            b.         Existence of a breach

Davis also contended in his no-evidence motion for
summary judgment that there was no evidence of a breach because Davis did not
agree to pay Friedson’s commission, and Friedson agreed to look solely to the
seller for his commission.  

Friedson argued in his response that when Davis
stopped using his services after signing the agreement, Davis defaulted on the
agreement and is liable for the cost of his commissions under a default
provision in the agreement.  Friedson stated in his affidavit that after the
agreement was signed, he called to arrange a tour of the property and exchanged
emails with Davis about the time of the tour.  According to the affidavit, Jones
called Friedson and was upset that Friedson had another potential buyer looking
at the same property.  Friedson stated that he did not hear from Davis after
the call from Jones and did not see Davis at the property tour.  Friedson later
learned that Davis bought the property directly from KET.  Friedson did not
receive a commission from KET or Davis. 

Friedson also attached to his response an unsigned
copy of the representation agreement.  Under the heading “Client’s
Obligations,” paragraph 6A of the agreement requires Davis to “work exclusively
through Broker when acquiring property in the market area and negotiate the
acquisition of property in the market area only through Broker.”  The default
provision states:  “If either party fails to comply with this agreement . . . the
non-complying party is in default.  If Client is in default, Client will be
liable for the amount of compensation that Broker would have received under
this agreement if Client was not in default.”  Friedson and National Income
Property are listed under “Broker” and Davis is the “Client.”  

Davis’s handwritten alteration on the signed copy
attached to Davis’s motion states that “[n]otwithstanding paragraph 11, broker
will receive all commissions directly from Seller.”  Paragraph 11 is titled
“Broker’s Fees.”  The default provision is paragraph 13.[6] 

Davis’s argument that the handwritten notation means he
did not agree to pay Friedson’s commission under paragraph 11 does not address
the agreement’s separate default provision in paragraph 13, which purports to
make Davis liable for the commission if Davis defaults by failing to use
Friedson’s services.  Friedson has produced summary judgment evidence raising a
genuine issue of material fact as to whether Davis defaulted on the agreement
by failing to use Friedson’s services.  See Fieldtech Avionics &
Instruments, Inc. v. Component Control.Com, Inc., 262 S.W.3d 813, 828 (Tex.
App.—Fort Worth 2008, no pet.) (party’s affidavit stating opposing party
promised software product would meet needs and it failed to meet needs enough
to create fact issue on breach of agreement); Oliver v. Rogers, 976
S.W.2d 792, 803 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (language in
restrictive covenant did not support assertion that there was no breach, and
therefore, was not valid ground for granting of summary judgment).  We hold
that a no-evidence motion for summary judgment could not be predicated on the
absence of evidence of a breach.   

2.         Traditional Motion for Summary Judgment

            Under the
“traditional motion for summary judgment” heading, Davis argued that Friedson’s
breach of contract and fraud claims failed because (1) the agreement violated
the statute of frauds under the Real Estate License Act; (2) no enforceable
agreement was formed because there was no meeting of the minds on the material
term of whether Friedson would look to the seller or buyer for his commission;[7] and (3) there is
no cause of action for fraud in failing to pay a commission absent an
enforceable agreement.  

We review a traditional summary judgment de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215
(Tex. 2003).  A defendant who conclusively negates at least one essential
element of a cause of action is entitled to summary judgment on that claim.  IHS
Cedars Treatment Ctr. Of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798
(Tex. 2004).  A defendant is entitled to summary judgment on an affirmative
defense if the defendant conclusively proves all the elements of the
affirmative defense.  KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,
988 S.W.2d 746, 748 (Tex. 1999); see Tex. R. Civ. P. 94 (statute of
frauds is affirmative defense).  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact.  Harrison County Hous. Fin. Corp., 988
S.W.3d at 748; Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995).  We examine the entire record in the light most favorable to the
non-movant, indulging every reasonable inference and resolving any doubts
against the motion in the non-movant’s favor.  Wilson, 168 S.W.3d at
824-25.  

Davis contended below that the agreement did not
comply with subsection (c) of the Real Estate License Act.  That subsection
states:

A person may not maintain an action in this state to
recover a commission for the sale or purchase of real estate unless the promise
or agreement on which the action is based, or a memorandum, is in writing and
signed by the party against whom the action is brought or by a person
authorized by that party to sign the document.

Tex. Occ. Code Ann. §
1101.806(c) (Vernon 2004).  Davis contended that the agreement does not comply
with this provision because the party to be charged with paying commission was
the seller, whose signature does not appear on the agreement.  In support of
his traditional motion for summary judgment, Davis attached a copy of the
“Commercial Buyer/Tenant Representation Agreement,” signed by Davis, his own
supplemental affidavit, and the affidavit of Thomas B. Wilkinson, IV.[8]  Friedson asserted
in response that there was a writing signed by Davis, the party against whom
the action was brought; Friedson argues that the statute was satisfied and
Davis was liable under the default provision.  

We agree with Friedson that section 1101.806(c) does
not preclude enforcement of the contract.  Friedson is seeking his commission
under the agreement’s default provision in paragraph 13, which states:  “If
Client is in default, Client will be liable for the amount of compensation that
Broker would have received under this agreement if Client was not in default.” 
Davis is the “Client,” and Davis signed the agreement.  Therefore, the
agreement has been signed by the party against whom the action is brought.[9]  

On
appeal, Friedson and Davis also argue about whether the agreement (1) promises
a definite commission will be paid; and (2) specifies the land to be conveyed
with reasonable certainty.  Courts construing section 1101.806(c) have stated
that compliance with this provision requires an agreement that (1) is in
writing and signed by the person to be charged with the commission; (2) promises
a definite commission will be paid, or refers to a written commission schedule;
(3) states the name of the broker to whom the commission is to be paid; and (4)
identifies with reasonable certainty the land to be conveyed, either itself or
by reference to some other existing writing.  See LA & N
Interests, Inc. v. Fish, 864 S.W.2d 745, 749-50 (Tex. App.—Houston [14th
Dist.] 1993, no writ), disapproved of on other grounds by Trammell
Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 634 (Tex. 1997).  These
grounds were not raised in the motion for summary judgment.  Therefore, summary
judgment cannot be affirmed on these grounds.  See City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  

In any
event, the agreement satisfies the Real Estate License Act.  The agreement
stated that the broker would receive one percent of the gross sales price if
the client purchased the property.  It also listed “Houston, TX” as the market
area with a notation under the heading “Special Provisions” that the agreement
was limited to “210 Unit Apartment Complex Known As Woodlen Place.”  This
information suffices.  See James v. Baron Indus., Inc., 605
S.W.2d 330, 332 (Tex. App.—Houston [14th Dist.] 1980, writ ref’d n.r.e.)
(description “Willowick Place patio homes and the five (5) townhomes on
Nantucket” with dateline of “City of Houston, Harris County, Texas” sufficient
to satisfy statute).[10]  

            The trial court
erred in granting traditional summary judgment on the ground that the agreement
did not comply with the Real Estate License Act.  Consequently, the trial court
also erred in granting traditional summary judgment on Friedson’s fraud claim
on the ground that the agreement did not comply with the Real Estate License
Act.

            We sustain
Friedson’s first issue on appeal.

B.        Motion for
Continuance

In his second issue, Friedson contends the trial
court erred by denying his motion for continuance because his new attorney,
hired five days before the response to the motion for summary judgment was due,
did not have adequate time to prepare and almost no discovery had been conducted
by the previous attorney.  

Because we sustain Friedson’s first issue and reverse
the granting of the motion for summary judgment, we need not address whether
the trial court abused its discretion by not allowing Friedson’s newly hired
attorney more time to conduct discovery and respond to the motion.  See
Sipes v. Gen. Motors Corp., 946 S.W.2d 143, 161 (Tex. App.—Texarkana 1997,
writ denied) (declining to address motion for continuance which requested more
time to take testimony of experts because on remand the Sipeses would have
opportunity to do so). 

We now turn to Davis’s appeal, in which Davis argues
that the trial court erred by (1) dismissing his counterclaims for want of
prosecution, and (2) denying his motion to reinstate.

C.        Dismissal of
Davis’s Counterclaims for Want of Prosecution  

In his first issue, Davis contends the trial court
erred when it dismissed his counterclaims for DTPA violations, common law
fraud, fraud in a real estate transaction, breach of contract, and attorney’s
fees for want of prosecution because Davis did not receive notice of the
dismissal hearing.[11]

We apply an abuse of discretion standard of review to
a trial court’s dismissal for want of prosecution and denial of a motion to reinstate. 
MacGregor v. Rich, 941 S.W.2d 74, 75 (Tex. 1997) (per curiam) (dismissal
for want of prosecution); Smith v. Babcock & Wilcox Const. Co., 913
S.W.2d 467, 467 (Tex. 1995) (per curiam) (denial of motion to reinstate).  A
trial court abuses its discretion if it acts without reference to any guiding
rules or principles or acts in an arbitrary or unreasonable manner.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  In
reviewing a trial court’s dismissal order, we look at the entire history of the
case and perform a fact intensive, case-by-case determination.  See Olin
Corp. v. Coastal Water Auth., 849 S.W.2d 852, 856-58 (Tex. App.—Houston
[1st Dist.] 1993, no writ).

A trial court’s authority to dismiss for want of
prosecution stems from two sources:  (1) Rule 165a of the Texas Rules of Civil
Procedure; and (2) the court’s inherent power.  See Villarreal v. San
Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex. 1999).  A trial court
may dismiss under Rule 165a on “failure of any party seeking affirmative relief
to appear for any hearing or trial of which the party had notice,” or when a
case is “not disposed of within time standards promulgated by the Supreme
Court.” Tex. R. Civ. P. 165a(1)-(2).[12] 
In addition, the common law vests the trial court with the inherent power to
dismiss independently of the rules of procedure when a plaintiff fails to
prosecute his or her case with due diligence.  Tex. R. Civ. P. 165a(4); Villarreal,
994 S.W.2d at 630.[13] 


A trial court generally must provide notice and a
hearing before dismissing a case under Rule 165a or its inherent power.  See
Tex. R. Civ. P. 165a(1); Villarreal, 994 S.W.2d at 630.  The notice and hearing
requirements ensure that the dismissed claimant has received due process.  Smith
v. McKee, 145 S.W.3d 299, 302 (Tex. App.—Fort Worth 2004, no pet.); Tex.
Sting Ltd. v. R.B. Foods, Inc., 82 S.W.3d 644, 648 (Tex. App.—San Antonio
2002, pet. denied); Franklin v. Sherman Indep. Sch. Dist., 53 S.W.3d
398, 401 (Tex. App.—Dallas 2001, pet. denied).  The failure to provide adequate
notice of the trial court’s intent to dismiss for want of prosecution requires
reversal.  Villarreal, 994 S.W.2d at 630-31.  However, a lack of notice can
be cured when the trial court holds a hearing on the appellant’s motion to
reinstate.  Jimenez v. Transwestern Prop. Co., 999 S.W.2d 125, 129 (Tex.
App.—Houston [14th Dist.] 1999, no pet.) (maj. op.).   

Here, the June 24, 2008 Notice of Intent to Dismiss
was addressed only to Friedson’s attorney even though the body of the notice refers
to “All Counsel and Pro Se parties.”  Davis contends his due process rights
were violated because he did not receive notice of the trial court’s intent to
dismiss.  Davis learned of the dismissal order in time to file a motion to
reinstate.  Davis was afforded his due process rights because he received
actual notice of the dismissal order in time to file a motion to reinstate, and
a hearing was held on that motion.  Id.  The hearing was held at a time
when the trial court had full control of the judgment.  Id.  There is no
indication that Davis was denied an opportunity to be heard at the hearing.  Keough
v. Cyrus USA, Inc., 204 S.W.3d 1, 6 (Tex. App.—Houston [14th Dist.] 2006,
pet. denied) (maj. op.).  Thus, if the trial court failed to notify Davis of
its intent to dismiss the case, the error was cured.[14]  Id.    

Therefore, Davis’s first issue is overruled.

D.        Davis’s Motion
to Reinstate

In his second issue, Davis argues that the trial
court erred when it denied his motion to reinstate after the dismissal.  Davis
contends he demonstrated in the motion to reinstate that (1) he did not have
notice of the trial court’s intent to dismiss; (2) the June 24, 2008 notice was
addressed only to Friedson’s attorney and indicated only Friedson’s claims
would be dismissed; and (3) Davis had diligently pursued his counterclaims and
was ready for trial.     

On October 2, 2008, Davis filed a motion to reinstate
his counterclaims after dismissal for want of prosecution, verified by his
attorney.[15] 
In the verified motion, Davis stated that his attorney did not receive notice
of the court setting the case on the dismissal docket.  Davis further stated
that his attorney discovered the dismissal when Davis let him know that, around
the time of Hurricane Ike, Davis personally received a mailed notice from the
clerk of the court postmarked September 8, 2008, reflecting that a motion for
summary judgment had been granted in the case.  On September 19, 2008, while on
the court’s website, Davis’s attorney discovered the case had been dismissed
for want of prosecution on September 9, 2008.  Davis attached to the motion to
reinstate a certified copy of the notice of intent to dismiss addressed only to
Friedson’s counsel.  

On a party’s motion, the trial court shall reinstate
a case if it finds after a hearing that the failure of the party or his
attorney was not intentional or the result of conscious indifference but was
due to an accident or mistake or that the failure has been otherwise reasonably
explained.  Tex. R. Civ. P. 165a(3).  A failure to appear is not intentional or
due to conscious indifference within the meaning of the rule merely because it
is deliberate; it also must be without adequate justification.  Smith,
913 S.W.2d at 468.  Proof of such justification—accident, mistake or other
reasonable explanation—negates the intent or conscious indifference for which
reinstatement can be denied.  Id.  

Because the certified copy of the notice of intent to
dismiss addressed only to Friedson’s attorney reasonably explained why Davis
and his attorney failed to appear at the dismissal hearing, and because the
record in this case contains no evidence that the failure was intentional or
the result of conscious indifference, the trial court abused its discretion
when it denied the motion for reinstatement.  See Rava Square Homeowners
Ass’n. v. Swan, No. 14-07-00521-CV, 2008 WL 4390437, at *2-3 (Tex.
App.—Houston [14th Dist.] Sept. 30, 2008, no pet.) (mem. op.) (explanation
reasonable and no evidence of intentional failure or conscious indifference); Jackson
v. Thurahan, Inc., No. 14-02-00308-CV, 2003 WL 1566386, at *3 (Tex.
App.—Houston [14th Dist.] Mar. 27, 2003, no pet.) (mem. op.) (same). Davis’s
second issue is sustained.[16] 
Davis’s claims for DTPA violations, common law fraud, fraud in a real estate
transaction, breach of contract, and attorney’s fees against Friedson are
remanded for further proceedings.  

III.      Conclusion

We reverse the trial court’s judgment granting summary
judgment on Friedson’s claims for breach of contract and fraud and remand.  The
trial court also erred in denying the motion to reinstate Davis’s counterclaims. 
We therefore reverse the trial court’s judgment dismissing Davis’s
counterclaims; we remand Davis’s counterclaims for DTPA violations, common law
fraud, fraud in a real estate transaction, breach of contract, and attorney’s
fees against Friedson.  The remainder of the judgment was not challenged on
appeal and is affirmed.  The appeal is dismissed for want of prosecution as to
Wilkinson, KET, and Jones.  

Accordingly, we dismiss the appeal in part; affirm the
trial court’s judgment in part; reverse in part; and remand for further
proceedings consistent with this opinion.  

 

                                                                        

                                                            /s/        William
J. Boyce

                                                                        Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Anderson and Boyce.

 









[1]
At the time Davis filed his April 29, 2008
combined no-evidence and traditional summary judgment motion, Friedson was the
only plaintiff in the case.  Friedson did not add National Income Property as a
plaintiff until Friedson’s first amended petition was filed on June 5, 2008. 
Davis did not amend his summary judgment motion to include National Income
Property before the trial court granted the motion.  Therefore, National Income
Property’s claims for breach of contract and fraud against Davis were not
disposed of by the trial court’s order granting Davis’s motion for summary
judgment on Friedson’s claims of breach of contract and fraud.  This order was
incorporated in the “Final Judgment.”  The “Final Judgment” recites that “all
other claims or counterclaims, if any, remaining after the prior above
mentioned Interlocutory Summary Judgment Orders were granted, were dismissed
for want of prosecution on September 9, 2008.”  This recitation disposed of
National Income Property’s claims for breach of contract and fraud. 

On appeal, Friedson and
National Income Property challenge the order granting Davis’s combined
no-evidence and traditional summary judgment motion and the denial of
Friedson’s motion for continuance.  National Income Property’s claims for
breach of contract and fraud were not disposed of by the order granting the April
29, 2008 motion for summary judgment and National Income Property was not a
party at the time Friedson filed his motion for continuance or at the time the
trial court denied it.  Therefore, National Income Property has not presented
any issues for this court’s review.     

 





[2]
Davis asserted a counterclaim seeking a declaratory judgment, along with
counterclaims asserting liability for DTPA violations, breach of contract,
fraud, and attorneys’ fees.  The declaratory judgment counterclaim was
dismissed in a summary judgment order, which Davis does not challenge on
appeal.  Davis’s remaining counterclaims were dismissed for want of
prosecution, which Davis does challenge on appeal along with the trial court’s
denial of his motion to reinstate.





[3]
In a document entitled “Order Granting Partial Motion to Reinstate After
Dismissal Without Prejudice of Defendant’s Counterclaims Only and Reinstating
Prior Granted Summary Judgments,” a line is drawn through the proposed order
and “Motion to Reinstate Denied” is written across it.  The order is dated
October 24, 2008 and is signed by the trial court.





[4]
Wilkinson, KET, and Jones did not file briefs or
otherwise pursue their respective appeals.  Therefore, we dismiss their appeals
for want of prosecution.  Tex. R. App. P. 42.3(b); Physio GP, Inc. v. Naifeh,
No. 14-08-00017-CV, 2010 WL 374515, at *1 n.1 (Tex. App.—Houston [14th Dist.]
2010, no pet. h.).  

 





[5]
While Friedson does not list the unsigned letter of intent to purchase the
property or the unsigned copy of the representation agreement under the heading
“Summary Judgment Evidence” in his summary judgment response, the record
reflects that Friedson attached both to his summary judgment response.  Davis
does not challenge the authenticity or admissibility of these documents.    

 





[6]
The copy attached to Davis’s motion is signed by Friedson and Davis and is
missing what appears to be every other line of the default provision, but
tracks the language of the provision contained in the unsigned copy.  No party
argues that a change was made to the default provision.  





[7]
While Davis asserted in his motion that no enforceable agreement was formed
because there was no meeting of the minds on a material term, his argument
under the traditional summary judgment heading in his motion speaks only to the
Real Estate License Act and the absence of a fraud claim if no contract
exists.  On appeal, Davis refers to Friedson’s
deposition excerpts as evidence to support his contention that the parties did
not have a meeting of the minds.  However, the record does not contain the
deposition excerpts.  We cannot consider documents that are not included in the
appellate record.  U.S. Bank Nat’l Ass’n v. Stanley, 297 S.W.3d 815, 821
(Tex. App.—Houston [14th Dist.] 2009, no pet.).   





[8]
Davis also refers
to Friedson’s deposition excerpts attached to Davis’s first motion for summary
judgment.  The record does not contain the first motion for summary judgment or
the deposition excerpts.  Davis has included deposition excerpts in the
appendix attached to his brief; however the court cannot consider documents
that are not properly included in the appellate record.  Stanley, 297
S.W.3d at 821.  If the pertinent summary judgment evidence considered by the
trial court is not in the appellate record, we presume the omitted evidence
supports the trial court’s judgment.  See Enter. Leasing Co. v. Barrios,
156 S.W.3d 547, 550 (Tex. 2004) (per curiam).  





[9]
In Trammel Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 633-34 (Tex.
1997), the Texas Supreme Court held that an exclusive representation agreement
providing for the buyers’ real estate broker to look to the seller for his
commission did not satisfy the statute because no terms of the exclusive
representation agreement charged the buyers with any obligation to pay the
commission.  See id. (construing version of the Real Estate
License Act before Act’s repeal and recodification in the Occupations Code;
current version materially identical to old version).  This case is
distinguishable because the exclusive representation agreement here contains a
default provision in paragraph 13 charging Davis, in the event of a default on
the agreement, with an obligation to pay the compensation Friedson and National
Income Property would have received under the agreement.  





[10]
Davis also asserts for the first time on appeal that
the agreement is unenforceable because it does not contain a definite ending
term, citing to a former version of Texas Administrative Code section 535.148. 
This court already has rejected this argument.  See Northborough Corporate Ltd.
v. Cushman & Wakefield of Tex., Inc., 162 S.W.3d 816, 820-21 (Tex.
App.—Houston [14th Dist.] 2005, no pet.) (commission agreement not void for
lack of termination date).     





[11]
As a threshold matter, we reject Friedson’s
contention that Davis waived any complaint about the final judgment because
Davis asked the trial court to enter final judgment.  Davis filed a motion to
enter final judgment because the parties disputed whether the trial court’s
August 26, 2008 interlocutory summary judgment order disposing of Davis’s
counterclaim for declaratory judgment disposed of all of Davis’s
counterclaims.  Contrary to Friedson’s assertion, Davis’s motion to enter final
judgment states that the “final order is submitted without waiver of any
objections or rulings previously made by this Court, including but not limited
to this Court’s denial of defendant’s motion to reinstate.”  It also states that
the judgment is submitted by Davis solely as to form.  Therefore, Davis has not
waived the right to complain on appeal about the dismissal for want of
prosecution and denial of the motion to reinstate.  See First Nat’l
Bank of Beeville v. Fojtik, 775 S.W.2d 632, 633 (Tex. 1989) (per curiam). 


 





[12]
The Rules of Judicial Administration provide that civil jury cases must be
disposed of within 18 months from the appearance date, and civil nonjury cases
within twelve months from the appearance date.  Tex. R. Jud. Admin. 6b(1)-(2), reprinted
in Tex. Gov’t Code Ann., tit. 2, subtit. F app. (Vernon Supp. 2009).





[13]
Davis also cites Harris County Local Rule 3.6 as a source of authority for
dismissal.  Under Local Rule 3.6, the following cases are eligible for
dismissal for want of prosecution pursuant to Texas Rule of Civil Procedure
165a: (a) cases on file for more than 120 days in which no answer has been
filed or is required by law; (b) cases which have been on file for more than
eighteen months and are not set for trial; and (c) cases in which a party or
his attorney has failed to take any action specified by the court.  Houston
(Tex.) Civ. Dist. Ct. Loc. R. 3.6(a)-(c).  





[14]
Davis argues that even if he had received notice of the dismissal hearing, the
notice was inadequate because it did not indicate under what authority the
court intended to dismiss.  Davis did not raise the issue of inadequate notice in
his motion to reinstate.  Because this argument was not presented to the trial
court, we do not consider it on appeal.  Tex. R. App. P. 33.1; Keough,
204 S.W.3d at 5.  





[15]
Davis’s motion to reinstate includes a notice of
hearing for October 24, 2008.  There is no reporter’s record of the hearing;
however, the parties agree that the hearing took place.





[16] Friedson contends Davis cannot request that only his
counterclaims be reinstated because Texas Rule of Civil Procedure 165a speaks
to “cases” being reinstated and not “claims.”  Friedson does not cite any
authority construing Rule 165a in this manner.  Friedson also claims Davis’s
remaining counterclaims depended entirely on a contract for which no money had
changed hands, and which Davis had successfully attacked as unenforceable. 
Rule 165a does not require that the party seeking to reinstate the case
establish a “meritorious” claim or defense.  Tex. R. Civ. P. 165a; Sellers
v. Foster, 199 S.W.3d 385, 397 (Tex. App.—Fort Worth 2006, no pet.); Jackson,
2003 WL 1566386, at *4.