Michael Alan WALKER, Appellant

v.

**THOMASSON LUMBER COMPANY**
and Cahaba Pressure Treated Forest
Products, Inc., Appellees.

No. 14–04–01217–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 29, 2006.

Wayne Donald Collins, Michael A. Caddell, James Martin Juranek Jr., Houston, for appellants.

Ruth Ellen Piller, Jack McKinley, John Jackson, Nicholas E. Zito, Bruce C. Gaible, Houston, for appellees.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from the granting of two no-evidence summary judgments in favor of the defendants in a product liability case. Appellant, Michael Alan Walker, filed suit against appellees Thomasson Lumber Company ("Thomasson") and Cahaba Pressure Treated Forest Products, Inc. ("Cahaba") asserting that a utility pole, manufactured by Cahaba and distributed by Thomasson, contained a manufacturing defect that was the producing cause of injuries he sustained in a fall from that pole. Appellees filed separate no-evidence summary judgment motions, which the trial court granted. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Cahaba manufactures pine utility poles that it sells to Thomasson, a company that sells and ships utility poles to end users. Some of these poles were made according to specifications provided by Reliant Energy/HL & P ("Reliant"), a customer of Thomasson. Thomasson would purchase the poles from Cahaba and ship or deliver them to a Reliant storage facility. Once delivered to the storage facility, Reliant would use them as needed and would notify Thomasson, which then invoiced Reliant for the poles used.

On May 2, 2001, appellant, then a power line technician employed by Reliant, was participating in a two-week course designed to evaluate utility pole-climbing techniques and teach other work related skills. The training ground where Reliant conducted the training course contained a total of twenty newly installed chromated copper arsenic ("CCA") treated pine utility poles. Appellant had purchased new, serrated gaffs recommended by Reliant for climbing CCA poles. A gaff is a steel brace-type device that attaches to the ankle and foot of a linemen to enable that lineman to climb a utility pole. That morning, while ascending one of the poles, as he prepared to dig his right gaff into the pole, appellant's left foot gave way, causing him to fall approximately twelve to fifteen feet to the ground. As the result of his fall, appellant sustained injuries to his left arm and hand, neck, back, and head. Appellant was immediately transported to the hospital to be treated for his injuries.

Appellant did not know the reason he fell as he was not looking down while he was climbing and he did not look to see why his foot came out of the pole. The only witness who saw appellant fall was Reliant instructor Dwayne DeVries. DeVries, who was thirty to forty feet from the pole, testified he saw a small piece of wood come off the pole when appellant fell, close to the area where appellant had his foot planted. Eldon Sivley, another Reliant instructor, testified he inspected the pole after the ambulance left with appellant and saw a place on the pole near where he thought appellant fell, where the wood had splintered.[1] According to Sivley, this splinter was approximately five to six inches long and a half inch wide and deep. Several people from Reliant examined the pole the day of and the day after the fall, but they found nothing unusual about the

---

1. Appellant asserts that Sivley witnessed his fall. However, Sivley testified that while he was present at the site and examined the pole after the accident, he did not actually see appellant fall.

pole's condition. It was undisputed that splinters come off utility poles as a result of the act of climbing them using gaffs. Also, it is a common occurrence for linemen's gaffs to dislodge from a pole causing them to slide down the pole or fall. Appellant himself testified that climbing utility poles is difficult and that it was not unusual for linemen to fall from poles during training.[2]

At the end of a training session, it was Reliant's practice, at the discretion of the instructors, to have the trainees remove the old poles and install new poles for use during a future training session. The removed poles were then discarded by Reliant pursuant to their normal disposal policy. The pole at issue here was removed and disposed of by Reliant pursuant to its normal disposal policy.

In June 2001, the Walker accident was discussed at a meeting of Reliant's Pole Committee. Randy DeWeese, Thomasson's vice-president of operations, attended the meeting on behalf of Thomasson. It was at this meeting, some seven weeks after the accident, that Thomasson first heard about Walker's fall. By this time, the pole at issue had already been disposed of by Reliant.

Appellant filed suit against appellees asserting numerous causes of action, including a manufacturing defect products liability claim. After extensive discovery, appellees filed traditional and no-evidence summary judgments attacking all of appellant's causes of action. Regarding appellant's manufacturing defect claim, both appellees argued there was no evidence of a manufacturing defect as the basis for summary judgment. In addition, Cahaba asserted appellant had no evidence the alleged defect was a producing cause of appellant's injuries. Appellees also moved to strike appellant's expert, James Taylor. The trial court never signed an order striking Taylor as an expert but an order was signed striking his affidavit. The trial court granted appellees' summary judgment motions, and this appeal followed. The only cause of action at issue here is appellant's manufacturing defect products liability claim.

## DISCUSSION

Appellant raises two issues on appeal. First, appellant argues he produced more than a scintilla of evidence in his summary judgment response, and therefore, the trial court erred when it granted appellees' motions. In his second, alternative issue, appellant argues he is entitled to a spoliation of evidence presumption, and therefore, the granting of appellees' summary judgment motions was improper. We address appellant's issues in order.

### I. Appellant failed to produce summary judgment evidence exceeding a scintilla.

#### A. Standard of Review

After sufficient time for discovery has passed, a party may file a no-evidence motion for summary judgment if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). In a no-evidence motion for sum-

2. The record shows that Reliant made a decision to switch from creosote treated utility poles to CCA poles. It is also clear that CCA poles are more difficult to climb than creosote poles due to the fact the treatment process makes the pole harder than a creosote pole. The record also demonstrates that safety equipment is available that prevents a fall from a pole in the event a gaff dislodges and this equipment is used when new linemen enter Reliant's training program. Appellant had previously been qualified as a climber and therefore was not allowed to wear the safety equipment.

mary judgment, the movant must specifically state the elements as to which there is no evidence. *Howell v. Hilton Hotels Corp.*, 84 S.W.3d 708, 711 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). In reviewing a no-evidence summary judgment, we review the evidence in the light most favorable to the non-movant and disregard all evidence and inferences to the contrary. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 284 (Tex.App.-Houston [14th Dist.] 2000, no pet.). We sustain a no-evidence summary judgment if (1) there is a complete absence of proof of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* Less than a scintilla of evidence exists when the evidence offered to prove a vital fact is so weak so as to do no more than create a mere surmise or suspicion of its existence, and in legal effect is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions as to the existence of the vital fact. *Id.* Because the propriety of summary judgment is a question of law, we review the trial court's decision *de novo*. *Brown v. Blum*, 9 S.W.3d 840, 844 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.).

### B. Elements of a Manufacturing Defect Cause of Action

Under Texas law, a manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous. *Ridgway*, 135 S.W.3d at 600. A plaintiff must prove the product was defective when it left the hands of the manufacturer and the defect was a producing cause of plaintiff's injuries.[3] *Id.* Expert testimony is not necessarily required to establish a manufacturing defect. *The Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107, 111 (Tex.App.-San Antonio 2004, pet. denied). Nor is direct evidence required to establish the existence of a defect, which often can be proven only by circumstantial evidence. *Id.*

### C. Appellant's Circumstantial Evidence of a Defect

In their no-evidence motions, both appellees asserted appellant had no evidence of the existence of a defect in the utility pole that existed at the time it left the hands of the manufacturer. In addition, Cahaba argued appellant had no evidence that the alleged defect was a producing cause of appellant's injuries. Appellant argues that he produced sufficient circumstantial evidence to avoid summary judgment through his explanation of the circumstances surrounding his fall from the pole.

If a plaintiff has no evidence of a specific defect in the manufacture of a product, he may offer evidence of its malfunction as circumstantial proof of the product's defect. *Gen. Motors Corp. v.*

---

**3.** In addition to a manufacturer being liable, Texas courts have followed section 402A of the Restatement (Second) of Torts in holding that strict liability in tort lies against the distributor placing the defective product in the stream of commerce. *See FFE Transp. Serv., Inc. v. Fulgham*, 154 S.W.3d 84, 88 (Tex.

2004) (citing *Rourke v. Garza*, 530 S.W.2d 794, 800 (Tex.1975)). Therefore, Thomasson's argument that it cannot be held liable under a strict liability theory because it was only the distributor of the utility pole at issue is without merit.

*Hopkins,* 548 S.W.2d 344, 349–50 (Tex. 1977) *overruled in part on other grounds by Turner v. Gen. Motors Corp.,* 584 S.W.2d 844, 847 (Tex.1979). Appellant argues his testimony and report of the accident combined with the testimony of DeVries, the only witness who actually saw appellant fall, is evidence that the pole malfunctioned. However, appellant admitted that he was not looking at his feet when he fell and did not know why he fell. In addition, appellant admitted his version of the cause of the accident found in the Reliant accident report was what others had told him. DeVries testified that while he saw appellant fall, he did not know what caused appellant's fall. The mere fact that an accident occurs with a product is not sufficient proof of a defect for purposes of strict products liability. *Parsons v. Ford Motor Co.,* 85 S.W.3d 323, 330 (Tex.App.-Austin 2002). Inasmuch as there was no witness who could testify as to the actual circumstances of appellant's accident, there is no circumstantial evidence establishing a manufacturing defect. *Rios,* 143 S.W.3d at 112. Therefore, appellant's case rests entirely on the opinion offered by his expert, James Taylor. *Id.*

**D. Appellant's Expert Opinion Evidence**

As part of his summary judgment response evidence, appellant submitted the deposition testimony of his expert witness. Appellant also submitted an unsworn and undated affidavit allegedly prepared by Taylor. Cahaba moved to strike Taylor as an expert witness and also separately filed objections to appellant's summary judgment proof, including Taylor's affidavit. As its basis for objecting to Taylor's affidavit, Cahaba argued Taylor's opinions expressed therein were unreliable and the affidavit was unsworn and undated. The trial court eventually signed an order striking Taylor's affidavit.

The trial court conducted a hearing on Cahaba's motion to strike Taylor, but never signed an order striking Taylor as an expert witness. Thomasson tells this court that we may not consider Taylor's deposition testimony because, according to Thomasson, the trial court struck Taylor. Thomasson bases this conclusion on a docket entry made by the trial court noting that Cahaba's motion to strike expert was granted. Thomasson mistakes a docket entry for a signed order. The law is clear in Texas that a docket entry is not a written order and forms no part of the record that an appellate court may consider for purposes of appeal. *See In re Burlington Coat Factory Warehouse of McAllen, Inc.,* 167 S.W.3d 827, 831 (Tex.2005); *Roever v. Roever,* 824 S.W.2d 674, 676 (Tex.App.-Dallas 1992, no writ). Cahaba's reference to the order striking Taylor's affidavit will not preclude our consideration of Taylor's deposition testimony for two reasons: (1) the order specifically refers only to the affidavit; and (2) Cahaba argued that the affidavit was unsworn as an additional reason to exclude it. As there is no written order striking Taylor, his deposition testimony formed part of the summary judgment evidence considered by the trial court and is part of the appellate record.

However, our inquiry does not end there. When a trial court admits expert testimony and on appeal that testimony is challenged as constituting no evidence, an appellate court considers whether the expert testimony is reliable under a *de novo* standard of review. *Rios,* 143 S.W.3d at 113. To be reliable, the expert's testimony must be grounded in scientific method and procedure such that it amounts to more than subjective belief or unsupported speculation. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 557 (Tex.1995). In *Rob-*

*inson*, the Texas Supreme Court enumerated a list of factors to determine the reliability of expert testimony, including: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses that have been made of the theory or technique. *Id.* Later, the Texas Supreme Court explained that the existence of an analytical gap between the data upon which the expert relies and the conclusion the expert reaches can be an indicator the expert's testimony is unreliable. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997). In addition, the Texas Supreme Court has recognized that the *Robinson* factors do not always apply and a court may give weight to the skill and experience of an expert in appropriate circumstances. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998).

Using the deposition testimony and documents produced in the litigation, along with his experience, Taylor opined that the utility pole from which appellant fell, which he had never seen, had compression wood which caused Walker's fall. Taylor testified he knows of no studies using his experience-based methodology that would give a rate of error for it. In addition, he was not aware of any literature in the field that validates his methodology. Taylor agreed there were only two scientifically recognized methods for determining if a tree

has compression wood: taking a boring sample or a cross-section from the tree and examining those samples to verify if the telltale compression wood rings are present.[4] Taylor testified these are the only methods recognized in wood product literature and are the conventional and mainstream methods of determining compression wood's existence. Taylor also admitted this case represented the first case involving a fall from a utility pole in which he rendered an opinion where he did not have an opportunity to either physically examine at least a section of the utility pole involved or photographs of that pole. Taylor also admitted that there were other reasons why climbers fall from utility poles unrelated to any flaw in the wood. Finally, Taylor did not testify as to any deviation of the utility pole from Reliant's specifications as the specifications were not in evidence and he was unable to physically examine the pole. Taylor's opinion that appellant's fall was caused by compression wood represents nothing more than speculation and conjecture about what occurred at the time of the accident, and therefore constitutes no evidence that a defect existed in the pole. We hold appellant failed to produce more than a scintilla of evidence that the pole was defective at the time it left the hands of the manufacturer. Accordingly, we overrule appellant's first issue.

## II. Appellant is not entitled to a spoliation presumption.

■ In his second issue, appellant asserts he is entitled to a spoliation presumption against Thomasson because Thomasson failed to preserve the utility pole. Since he was entitled to a spoliation presumption, appellant argues, the trial

---

**4.** Compression wood has an uneven growth ring pattern, such that one side is not as dense as the other side.

court erred when it granted Thomasson's motion for summary judgment. We disagree.

▮▮▮▮▮ Spoliation is the improper destruction of evidence, proof of which may give rise to a presumption that the missing evidence would be unfavorable to the spoliator. *Brumfield v. Exxon Corp.,* 63 S.W.3d 912, 919 n. 3, 920 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). To raise the spoliation issue, the party seeking the presumption bears the burden of establishing that the alleged spoliator had a duty to preserve the evidence in question. *Wal-Mart Stores, Inc. v. Johnson,* 106 S.W.3d 718, 722 (Tex.2003). This duty to preserve evidence arises when a party knows or reasonably should know (1) that there is a substantial chance that a claim will be filed and (2) that evidence in its possession or control will be material and relevant to that claim. *Id.* When a party demonstrates an entitlement to a spoliation presumption, the presumption precludes a court from granting a summary judgment. *Aguirre v. S. Tex. Blood & Tissue Center,* 2 S.W.3d 454, 457 (Tex. App.-San Antonio 1999, pet. denied). A trial court's denial of a spoliation instruction is subject to an abuse of discretion standard of review. *See Johnson,* 106 S.W.3d at 723.

The evidence was undisputed that Reliant, not Thomasson, had possession and control of the utility pole at all times relevant to this case. In addition, it was undisputed that it was Reliant, not Thomasson, that disposed of the utility pole in its ordinary course of business. As Thomasson did not have possession or control of the utility pole, appellant failed to establish his entitlement to a spoliation presumption and the trial court did not abuse its discretion by denying appellant an instruction on that presumption. We overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the trial court's granting of appellees' motions for summary judgment.