Affirmed and Opinion filed September 20, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00758-CV

___________________

 

Ivo Dworschak, Appellant

 

V.

 

Transocean Offshore Deepwater Drilling, Inc.,
Appellee



 



 

On
Appeal from the 11th Judicial District Court

Harris County,
Texas



Trial Court Cause No. 2008-56582

 



 

 

OPINION

            Appellant,
Ivo Dworschak, appeals the trial court’s granting of a no-evidence summary
judgment in favor of Transocean Offshore Deepwater Drilling, Inc.  We affirm.

I

On March 26, 2008, Dworschak was employed in
Singapore as a senior project manager for Transocean.  As part of his duties,
he participated in a meeting to discuss a particular project.  According to
meeting notes taken by a Transocean employee, five Transocean employees and three
representatives of a subcontractor, Sembawang Shipyard Pte. Ltd. (SSPL), attended
the meeting.  The discussion became acrimonious when a disagreement arose about
the schedule for meeting project deadlines.  

Several witnesses reported Dworschak became upset and
tore up documents.  Jit Singh, an employee of SSPL, stood up to leave the
meeting room.  SSPL employee S.J. Chang asserts in his witness statement that Dworschak
blocked Singh’s exit, grabbed him by the arm, and pushed him.  Singh fell into
a chair.  Other people intervened and the meeting was terminated after Singh
fell.  

Dworschak’s accounts of the incident have varied.  According
to the deposition he gave in 2009, he was pleading with Singh not to leave the
room, but Singh “lower[ed] his head and he was pushing himself against”
Dworschak.  In an affidavit given months later, however, Dworschak explains
that the meeting room was narrow and Singh had little room to maneuver when he
decided to leave.  Dworschak maintains Singh approached him while leaving, and Dworschak
stood up and requested that Singh return to his seat to conclude the meeting.  He
explains: 

Since
I was standing up, and my chair was squeezed against the wall, there was no
room free for him to pass behind me. . . . [W]e eventually became very close to
each other, while he was trying to pass [between] me and the wall.  Upon light
contact he moved backwards and he tripped over a displaced chair on his back
and sat down.  I did not push Mr. Jit Singh. . . .

 

The incident was reported to Dick Verhaagen, director
of projects for the Asia-Pacific unit of Transocean.  In an affidavit,
Verhaagen testifies that he then notified both Charles Keaton, director of projects,
and Transocean’s human-resources department.  He also requested witness
statements from all meeting attendees.  Verhaagen asserts he and Keeton decided
Dworschak should leave Singapore and return to Houston immediately.  On the
date of the incident, Verhaagen emailed several people that effective
immediately, another Transocean employee, Lee O’Brien, would be in charge of
the project Dworschak had been leading.

The affidavit indicates that “[a]fter reviewing the
statements of witnesses to the altercation, meeting with Mr. [Dworschak] and
hearing his admission to pushing the [SSPL] employee, Transocean terminated Mr.
Dworschak . . . on April 18, 2008.”  In an email to Verhaagen that same day,
Keaton states:  

Meeting
is over.  [Dworschak] admitted he was wrong in blocking the exit and pushing
[Singh] and was responsible for his actions.  He felt severance was too harsh [but]
my position was [that] the actions alone were intolerable, [and] such actions
from a [senior project manager] are completely unacceptable.  As a result I
terminated him with two weeks’ severance.

 

Dworschak argues the termination was pretextual.  He
asserts the true reason for his termination was that he discovered “certain
billing and other irregularities” between a subcontractor and Verhaagen and he reported
his concerns to Transocean’s legal department.  He also contends that informing
personnel that O’Brien was in charge of the project on the same day as the
incident “indicates the premeditation of Verhaagen’s plans to retaliate against
[Dworschak] for blowing the whistle on [Verhaagen’s] questionable relationship
with the sub-contractor.”

On September 24, 2008, Dworschak filed his original
petition in the trial court asserting claims for (1) breach of contract; (2) wrongful
discharge; (3) intentional infliction of emotional distress; (4) libel, slander
and defamation; (5) business disparagement; and (6) age discrimination.  After
discovery, Transocean filed both a traditional and a no-evidence motion for
summary judgment on all of the claims listed above.  The trial court granted
the no-evidence motion for summary judgment, which Dworschak now appeals to
this court.  

II

In a no-evidence
motion for summary judgment, the
movant must specifically state the elements as to which there is no evidence.  Walker
v. Thomasson Lumber Co., 203 S.W.3d 470, 473–74 (Tex. App.—Houston [14th
Dist.] 2006, no pet.).  The trial court must grant the motion unless the
non-movant produces summary-judgment evidence raising a genuine issue of
material fact on each of the challenged elements.  Tex. R. Civ. P. 166a(i).
However, the non-movant is not required to marshal his proof; his response need
only point out evidence that raises a fact issue on the challenged elements.  Hamilton
v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

A
no-evidence summary
judgment is essentially a pretrial directed verdict, and
we apply the same legal-sufficiency standard in reviewing a no-evidence summary judgment
that we apply in reviewing a directed verdict.  Mathis v. Restoration
Builders, Inc., 231 S.W.3d 47, 50 (Tex. App.—Houston [14th Dist.] 2007, no
pet.).  We review the entire record in the light most favorable to the
non-movant, indulging every reasonable inference and resolving any doubts
against the motion.  City of Keller v. Wilson, 168 S.W.3d 802, 824 (Tex.
2005).  We sustain a no-evidence summary judgment
if: (1) there is a complete absence of proof of a vital fact; (2) the rules of
law or evidence bar the court from giving weight to the only evidence offered
to prove a vital fact; (3) the evidence offered to prove a vital fact is no
more than a scintilla; or (4) the evidence conclusively establishes the
opposite of a vital fact.  Walker, 203 S.W.3d at 474.  Less than a
scintilla of evidence exists when the evidence offered to prove a vital fact is
so weak it does no more than create the mere surmise or suspicion of its
existence and, in legal effect, is no evidence.  Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 601 (Tex. 2004).  More than a scintilla of evidence exists when
the evidence rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions as to the existence of the vital fact. Id.

We review
a trial court’s summary judgment de novo.  Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).  In an appeal from a summary judgment, the
issues an appellate court may review are those the movant actually presented to
the trial court.  Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625
(Tex. 1996).  If an appellant fails to challenge each independent ground on
which a summary judgment is based, the summary judgment should be affirmed.  Adams
v. First Nat’l Bank of Bells/Savoy, 154 S.W.3d 859, 875 (Tex. App.—Dallas
2005, no pet.).

B

1.         Breach
of Contract

Employment in Texas is presumed to be at-will.  Montgomery
County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998).  “[A]bsent a
specific agreement to the contrary, employment may be terminated by the
employer or the employee at will for good cause, bad cause, or no cause at
all.”  Id.  To alter the at-will employment status, “the employer must
unequivocally indicate a definite intent to be bound not to terminate the
employee except under clearly specified circumstances.”  Id.  It is the
employee’s burden to prove that the presumed at-will relationship was altered. 
Durckel v. St. Joseph Hosp., 78 S.W.3d 576, 581 (Tex. App.—Houston [14th
Dist.] 2002, no pet.).  

Dworschak argues he had an employment contract with
Transocean that Transocean breached by terminating him.  In Dworschak’s
affidavit dated April 2010, he asserts he had a “formal employment contract”
with Transocean.  He also proffers two “Assignment Memoranda” detailing
Transocean’s offer of job title, salary, vacation time, and other details of
employment; one is dated April 12, 2006, and the other March 17, 2007. 
However, each memorandum expressly provides it “does not constitute a contract
of employment.”  Moreover, each also provides that “[b]y acknowledgement of
receipt of this memo,” Dworschak affirms that he has “been informed of the ‘at
will’ nature of employment with [Transocean] . . . and [his] subsequent
acceptance of this as a condition of employment.”  Dworschak signed the second
of the two memoranda.

Although there was a formal contract between Dworschak
and Transocean, it was specifically an at-will agreement.  As a result, Dworschak
has failed to meet his burden to overcome the presumption that his employment
was at-will.  See Durckel, 78 S.W.3d at 581.  There is no
material fact question regarding Dworschak’s at-will status.  See Walker,
203 S.W.3d at 474.  As an at-will employee, Dworschak contractually agreed he could
be terminated for any reason.  See Montgomery County, 965 S.W.2d at
502.  The trial court correctly granted summary judgment on Dworschak’s
breach-of-contract claim.

2.         Wrongful
Discharge

Dworschak claims he was wrongfully discharged because
Transocean terminated him in contravention of the policies and procedures
listed in the company’s human-resources manual.  The record includes
Transocean’s policy on equal employment, termination for cause, and discipline. 
We have determined Dworschak was an at-will employee.  Dworschak has not cited
to any case law showing general company policies create an employment contract
when the signed agreement between the employee and employer specifically provides
that the employment is at-will.  Consequently, we conclude he has not provided
any evidence of a vital fact.  See Walker, 203 S.W.3d at 474.

We also note Dworschak argued in the trial court that
the reason for Dworschak’s wrongful termination is that he allegedly reported
improper behavior of a superior to the corporation.  Dworschak has not made
that argument to this court, so it is waived.  Tex. R. App. P. 38.1(i).  As a
result, we conclude the trial court did not err when it granted Transocean’s
no-evidence summary-judgment motion on Dworschak’s claim for wrongful
discharge.

3.         Intentional
Infliction of Emotional Distress 

There are four elements to an intentional-infliction-of-emotional-distress
claim:  (1) the defendant acted intentionally or recklessly; (2) the
defendant’s conduct was extreme and outrageous; (3) the defendant’s actions
caused the plaintiff emotional distress; and (4) the plaintiff’s emotional
distress was severe.  Tex. Farm Bureau Mut. Ins. Co. v. Sears, 84 S.W.3d
604, 610 (Tex. 2002).  Extreme and outrageous behavior by the defendant must be
“so outrageous in character, and so extreme in degree, as to go beyond all
possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized society.”  Id. (quoting Twyman v. Twyman,
855 S.W.2d 619, 621 (Tex. 1993)).    

Dworschak contends he suffered from intentional
infliction of emotional distress as a result of his termination.  According to
Dworschak, Transocean acted intentionally or recklessly by failing to
investigate the incident, and treated him extremely and outrageously both
during the termination process and after he was terminated.  In his affidavit, Dworschak
states he suffered severe emotional stress because he lost income and “would
have a difficult time obtaining employment commensurate with that he had
obtained at [Transocean].”  

Dworschak claims Verhaagen failed to follow
Transocean policy during and after the termination because:  (1) Dworschak was
not rehired once new positions became available, which Dworschak alleges is in
contravention of the Transocean Equal Opportunity policy; (2) Verhaagen
officially fired Dworschak on March 26, 2008, without a review of the termination;
(3) Verhaagen did not follow the official disciplinary policy of Transocean
because Dworschak did not receive a warning about his alleged behavior and an
opportunity to modify his actions before termination.  

Transocean’s discipline policy describes a procedure
for providing an employee with escalating warnings about offenses before
ultimately terminating him.  But the policy also provides that the “statements
contained herein in no way modify or amend the existing employment at-will
relationship between [Transocean] and the employee.”  Dworschak’s argument that
he could not be terminated without first receiving warnings fails because an
at-will relationship does not require any notice or warnings before
termination.  Montgomery County, 965 S.W.2d at 502.  In addition, as an
at-will employee, Transocean owed Dworschak no duty to retain or re-hire him.  Id.

Dworschak fails to show any of his claims amount to
allegations of extreme and outrageous conduct by Transocean.  “[O]rdinary
employment disputes” do not give rise to claims for intentional infliction of
emotional distress.  GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 612
(Tex. 1999).  And only “‘in the most unusual of circumstances’ is conduct so
extreme and outrageous that is removed from the realm of ordinary employment
disputes.”  Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 741 (Tex.
2003) (per curiam) (quoting GTE Southwest, 998 S.W.2d at 613). 
Wrongfully terminating an employee “does not, standing alone, constitute
intentional infliction of emotional distress.”  City of Midland v. O’Bryant,
18 S.W.3d 209, 217 (Tex. 2000).  Neither do “mere insults, indignities,
threats, annoyances, petty oppressions, or other trivialities.”  GTE
Southwest, 998 S.W.2d at 612.

Transocean’s conduct in investigating the incident
and terminating Dworschak “was understandably unpleasant for him,” but the
entire affair was nevertheless an ordinary employment dispute.  See Wal-Mart
Stores, 121 S.W.3d at 742.  Moreover, even assuming the truth of
Dworschak’s thin allegations, Transocean’s “conduct was ‘within the bounds of
its discretion to supervise, review, discipline, and ultimately terminate’ its
employees.”  See id. (quoting Texas Farm Bureau, 84 S.W.3d at
611).  Accordingly, we cannot conclude that the allegations Dworschak makes rise
to the level of conduct “beyond all possible bounds of decency.”  See Texas
Farm Bureau, 84 S.W.3d at 610.  The trial court correctly decided Dworschak
failed to raise a fact issue on an essential element of intentional infliction
of emotional distress.  

4.         Defamation

Dworschak contends Transocean defamed him.  “To maintain a defamation cause of action, the plaintiff
must prove that the defendant: (1) published a statement; (2) that was
defamatory concerning the plaintiff; (3) while acting with either actual
malice, if the plaintiff was a public official or public figure, or negligence,
if the plaintiff was a private individual, regarding the truth of the
statement.”  WFAA-TV, Inc. v.
McLemore, 978 S.W.2d 568, 571 (Tex. 1998).  

In his brief, Dworschak alleges that Transocean
defamed him when it “published and republished a statement of fact to a third
person” that referred to Dworschak, was defamatory, and “was made without legal
excuse and was false and used as a pretext to wrongfully terminate” him.  But Dworschak
does not specify any statement in particular, how the statement was defamatory,
or how Transocean allegedly knew the statement was false.  Instead, he directs us
to more than one hundred pages of the clerk’s record.  We conclude Dworschak
has waived this issue on appeal.  See Tex. R. App. P. 38.1(i); Denmon
v. Atlas Leasing, L.L.C., 285 S.W.3d 591, 597 (Tex. App.—Dallas 2009, no
pet.).  

5.         Business Disparagement

Dworschak has also asserted a claim for business
disparagement, which requires proof of four elements:  (1) the defendant
published false and disparaging information about the plaintiff; (2) with
malice; (3) without privilege; (4) that resulted in special damages to the plaintiff. 
Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 170 (Tex.
2003).  To show malice, the plaintiff must prove that the statements were made
with knowledge they were false, with reckless disregard about the statements’
truth, or with ill will or an intent to interfere with the plaintiff’s economic
interest.  Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762, 766 (Tex.
1987).

In its no-evidence motion for summary judgment, Transocean
challenged the second element, asserting that Dworschak could provide no
evidence that Transocean acted with malice.  Specifically, Transocean denies knowing
the allegation about Dworschak physically assaulting Singh is false, or acting
with reckless disregard, or with an ill will or an intent to interfere with Dworschak’s
economic interest.  Indeed, Transocean maintains the allegation is not false at
all.

In the appellate record, there are multiple
eyewitness accounts that Dworschak “pushed” Singh.  These include the meeting
notes kept by Ian Ritchie and the witness statements of S.J. Chang, Robert
Sandoval, and Lee O’Brien.  Mardonildo Filho, another witness, described the
incident by writing, “[Singh] tried to exit the meeting room when [Dworschak]
had physical contact with [Singh] causing [Singh] to lose balance.  The [SSPL]
engineer stood between the two asking [Dworschak] to stay away and never do
this again.”  

In his affidavit, Dworschak describes the events as
accidental.  In his deposition, Dworschak claims Singh was the aggressor in the
physical altercation.  Beyond his own versions of the story, however, Dworschak
has not shown Transocean had any reason to believe the witness reports were
untrue or made with ill will.  This amounts to no evidence of malice.  See
Forbes, 124 S.W.3d at 170; Hurlbut, 749 S.W.2d at 766.  We
conclude the trial court did not err in granting Transocean’s summary-judgment
motion on business disparagement.

6.         Age
Discrimination

Dworschak also asserts a claim for age
discrimination, which consists of four elements:  (1) the plaintiff is a member
of the protected class; (2) the plaintiff was discharged; (3) the plaintiff was
qualified for the position from which he was discharged; (4) the plaintiff was
replaced by someone outside the protected class or was otherwise discharged
because of his age.  Russo v. Smith Int’l, Inc., 93 S.W.3d 428, 435
(Tex. App.—Houston [14th Dist.] 2002, pet. denied).  The protected class in an
age-discrimination suit is restricted to people forty years of age or older. 
Tex. Lab. Code § 21.101.  

In its no-evidence motion, Transocean challenges the
third and fourth elements, but also contends Dworschak “cannot bring a cause of
action for age discrimination under the [Texas Commission on Human Rights Act]
(TCHRA) due to his failure to exhaust his administrative remedies.”  Transocean
likewise asserts Dworschak’s failure to exhaust his administrative remedies in a
traditional motion for summary judgment filed the same day as the no-evidence
motion.  Dworschak filed one response to both motions.  In that response, Dworschak
proffers evidence supporting the third and fourth elements, but does not
respond at all to the allegation that he failed to exhaust his administrative
remedies.

Under the TCHRA, a person claiming to be aggrieved by
an unlawful employment practice, including an act of age discrimination, must
file a complaint with the Texas Workforce Commission not later than the 180th
day after the date the alleged unlawful employment practice occurred.  See Tex.
Labor Code § 21.202(a).  This administrative step is required before the person
may seek relief in a civil action.  Schroeder v. Tex. Iron Works, Inc.,
813 S.W.2d 483, 487–88 (Tex. 1991) (concluding that “exhaustion of administrative
remedies is a mandatory prerequisite to filing a civil action alleging
violations of the [TCHRA]”), overruled in part on other grounds by In re
United Servs. Auto. Ass’n, 307 S.W.3d 299 (Tex. 2010); see also Waffle
House, Inc. v. Williams, 313 S.W.3d 796, 804 (Tex. 2010) (citing Schroeder,
813 S.W.3d at 487).

Moreover, when a statute requires the exhaustion of
administrative remedies before a plaintiff may file suit, the plaintiff also
bears the burden to show he has met the prerequisite to suit.  Permian Basin
Cmty. Ctrs. for Mental Health & Mental Retardation v. Johns, 951 S.W.2d
497, 502 (Tex. App.—El Paso 1997, no writ); Methodist Hosps. of Dallas v.
Texas Workers’ Comp. Comm’n, 874 S.W.2d 144, 149 (Tex. App.—Austin 1994, no
writ); Rodriguez v. Am. Gen. Fire & Cas. Co., 788 S.W.2d 583, 585
(Tex. App.—El Paso 1990, writ denied).  The burden is on Dworschak, therefore,
to prove he has exhausted his administrative remedies.  Because Dworschak bears
the burden of proof on this issue, it is appropriately the subject of a
no-evidence motion for summary judgment.  See Hamilton, 249 S.W.3d at
426; Tex. R. Civ. P. 166a(i).

Under Rule 166a(i), a no-evidence motion for summary
judgment “must be specific in challenging the evidentiary support for an element
of a claim or defense; paragraph (i) does not authorize conclusory motions or
general no-evidence challenges to an opponent's case. ”  Tex. R. Civ. P.
166a(i) (cmt. 1997).  “The underlying purpose of this requirement ‘is to
provide the opposing party with adequate information for opposing the motion,
and to define the issues for the purpose of summary judgment.’”  Timpte
Indus., Inc. v. Gish, 286 S.W.3d 306, 311 (Tex. 2009) (quoting Westchester
Fire Ins. Co. v. Alvarez, 576 S.W.2d 771, 772 (Tex. 1978)).  The Supreme
Court of Texas has “analogized this purpose to that of the ‘fair notice’
pleading requirements of Rules 45(b) and 47(a).”  Id. (citing Westchester
Fire, 576 S.W.2d 772–73).

Transocean’s no-evidence motion gives fair notice to
Dworschak that it was challenging his failure to exhaust his administrative
remedies before suing for age-discrimination in a civil action.  Despite this
notice, Dworschak attaches no evidence and otherwise makes no attempt in his
response to the summary-judgment motions to raise a fact issue on the question
of exhaustion of remedies.  Accordingly, the trial court correctly granted
summary judgment on Dworschak’s age-discrimination claim. 

* * *

We affirm the trial court’s no-evidence summary
judgment.

 

                                                                        

                                                            /s/        Jeffrey
V. Brown

                                                                        Justice

 

 

 

Panel consists of Justices
Anderson, Brown, and Christopher.