**Affirmed in Part, Reversed in Part, and Remanded and Memorandum Opinion filed June 4, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00199-CV

### JANICE HUNICKE, Appellant,

### V.

### SEAFARERS INTERNATIONAL UNION, Appellee.

**On Appeal from the 80th District Court
Harris County
Trial Court Cause No. 2009-75113**

## M E M O R A N D U M   O P I N I O N

Appellant Janice Hunicke appeals the trial court's judgment in favor of her former employer, appellee Seafarers International Union, on her claims under the Texas Commission on Human Rights Act (the "Act"). We reverse the trial court's judgment as to Hunicke's sexual-harassment claim and remand the cause of action to the trial court for further proceedings consistent with this opinion.

# I

Hunicke began working as a secretary in Seafarers's Houston office in 1989.[1] Dean Corgey was the vice president of the office, and James McGee was the port agent, or assistant vice president. At all times relevant to this litigation, McGee directly supervised the employees in the office, including Hunicke.

Seafarers is a labor organization established to promote the interests of workers in the maritime industry. During Hunicke's employment, Seafarers members often had their personal mail sent to the office while they were at sea, where it would be held until the members returned. In August of 2008, however, the office became overwhelmed with the amount of personal mail it was receiving, so McGee instructed Hunicke to return what was already in the office and not to accept any more. Although she received similar instructions again in October and November, Hunicke failed to get rid of the mail. On December 30, an investigator from the Department of Public Safety went to the office and advised McGee and Corgey that 30 members, many of whom were fugitives and felons wanted for crimes including homicide and drug offenses, were illegally using the office's address as their personal address. McGee again told Hunicke to stop accepting members' mail and to return the mail already in the office. Nevertheless, Hunicke failed to follow the instructions, so on January 5, 2009, McGee fired her.

Shortly thereafter, Hunicke wrote a letter to Michael Sacco, the president of Seafarers, asking to be reinstated and explaining that she believed she was being discriminated and retaliated against because she had been fired without cause. Corgey called Hunicke on January 8 and reiterated that she was terminated because she refused to follow instructions about the mail. On May 5, Hunicke's attorney,

---

[1] Hunicke had previously worked as a secretary in Seafarers's Houston office from 1984 until 1985, when she left to have a child.

Glenn Patterson, sent Sacco a second letter, accusing Seafarers of gender discrimination, sexual harassment, and retaliation, and warning that Hunicke would sue unless Seafarers agreed to pay her $800,000 to settle the matter. On March 6, Hunicke filed a complaint based on those allegations with the Equal Employment Opportunity Commission and the Texas Commission on Human Rights.

On November 19, 2009, Hunicke sued Seafarers under the Act, again asserting claims for gender discrimination, sexual harassment, and retaliation.[2] On November 23, 2010, Seafarers filed a motion for summary judgment, alleging that Hunicke failed to establish a prima facie case of retaliation and that her sexual-harassment claim was barred by limitations. In her response, Hunicke conceded that her sexual-harassment claim was time barred and voluntarily dismissed it. On June 1, 2011, the trial court granted partial summary judgment as to Hunicke's retaliation claim only.

Meanwhile, on May 13, 2011, Hunicke had filed a motion for a spoliation instruction, claiming that McGee had intentionally destroyed two hard drives that contained evidence relevant to her claim. On August 24, she filed a motion for reconsideration of the partial summary judgment, arguing that it was improper in light of her motion for a spoliation instruction. The trial court denied her motion for reconsideration on October 11, and on that same day, Hunicke filed her first amended petition, in which she reasserted her sexual-harassment claim. After the trial court denied Seafarers's motion to strike the amended petition, Seafarers filed a second motion for summary judgment, again arguing Hunicke's sexual-

---

[2] Hunicke did not assert claims under Title VII of the Civil Rights Act of 1964. Nevertheless, because one of the purposes of the Act is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," we look to federal precedent for guidance when interpreting the Act. *See* Tex. Lab. Code § 21.001(1); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

harassment claim was barred by limitations. The trial court granted the motion. Finally, on February 23, 2012, the trial court denied Hunicke's motion for a spoliation instruction, and, after the parties agreed to the dismissal of Hunicke's third and final gender-discrimination claim, the court issued a final, take-nothing judgment against her.

On appeal, Hunicke argues: (1) the trial court abused its discretion by denying her motion for a spoliation-presumption instruction; (2) the trial court erred by granting partial summary judgment on her retaliation claim; and (3) the trial court erred by granting partial summary judgment on her sexual-harassment claim on the basis of limitations.

## II

In her first issue, Hunicke argues the trial court abused its discretion by denying her motion for a spoliation-presumption instruction because Seafarers knowingly destroyed evidence (the two hard drives) after it had notice that Hunicke intended to sue. Seafarers contends it had no duty to preserve the hard drives.

## A

Spoliation is the improper destruction of evidence, proof of which may give rise to a presumption that the missing evidence was unfavorable to the spoliator. *Walker v. Thomasson Lumber Co.*, 203 S.W.3d 470, 477 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Trial courts have broad discretion in determining whether to provide juries with a spoliation-presumption instruction. *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex. 1998); *Brumfield v. Exxon Corp.*, 63 S.W.3d 912, 920 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). We review a trial court's denial of a spoliation instruction for an abuse of that discretion. *Walker*,

4

203 S.W.3d at 477. If the trial court abused its discretion by denying the motion for a finding of spoliation, summary judgment would be improper. *See Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 722 (Tex. 2003); *Clark v. Randalls Food*, 317 S.W.3d 351, 356 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

To raise the spoliation issue, the party seeking the presumption bears the burden of establishing that the alleged spoliator had a duty to preserve the evidence in question. *Wal-Mart Stores, Inc.*, 106 S.W.3d at 722. This duty arises only when a party knows or reasonably should know (1) there is a substantial chance that a claim will be filed, and (2) evidence in its possession or control will be material and relevant to that claim. *Id.* Seafarers does not dispute the first prong.

To prevail on the second prong of the duty analysis, Hunicke must show that Seafarers knew or reasonably should have known that information on the two hard drives would be relevant to the action. *See id.* at 722. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401; *Clark*, 317 S.W.3d at 357. If there is some logical connection, either directly or by inference, between the evidence and a fact to be proved, the evidence is relevant. *Clark*, 317 S.W.3d at 357. If a party neither knows nor reasonably should know evidence in its possession is relevant, there is no duty to preserve it. *See Trevino*, 969 S.W.2d at 957 (Baker, J., concurring) ("[A] litigant is under no duty to keep or retain every document in its possession.") (internal quotation and citation omitted).

B

In October of 2009, McGee was cleaning out the storeroom of the Houston office when he found old computer equipment, including two computers. The equipment no longer worked, so McGee called the information-technology

5

department at Seafarers's headquarters and asked what to do with it. McGee was advised that he did not need to return the equipment to headquarters but was instructed to destroy the hard drives before disposing of the computers to protect the company's confidential information. Pursuant to those instructions, McGee destroyed the hard drives and donated the computers to a local Salvation Army.

On April 5, 2010, approximately six months later, Patterson sent a letter to Seafarers's attorney, Patrick Flynn, and asked to image Seafarers's computer drives. Flynn opposed the request, explaining that the office had seven or eight computers, and the hard drives contained a substantial amount of members' personal and confidential information as well as information about other business unrelated to the litigation. He suggested Patterson clarify what he was looking for so Flynn could try to accommodate the request. In response, Patterson said he "believe[d] the memos produced by Defendant were fabricated at a later date. I want to image the computer regarding these documents. You can tell me which computer the memos were made on. I don't need to see any other computers. Again we can protect your client files . . . ." Flynn, still opposing the request, asked which documents Patterson doubted and explained that some may have been typed on typewriters or on computers Seafarers no longer had. He also noted that Adrienne Nash, another Seafarers secretary, had typed all or some of the memos produced, and she was scheduled to be deposed at the end of the week.

Hunicke then filed a third request for production in which she requested documents related to any new computers purchased by Seafarers after January 1, 2009; documents reflecting the destruction of the hard drives; and Seafarers's document-retention policy. In response, Seafarers provided a second deposition of McGee, during which he testified that one of the computers had been "used for various items as far as shipping and registration, eligibility for medical, clinic slips,

[and] dues," but it crashed in February of 2008. The second computer was used by the secretaries to type memoranda, letters, and things of that nature until it crashed in January of 2009. Seafarers kept hard copies of all the documents that were generated on the second computer. McGee also testified that he keeps a hard-copy personnel file for each employee in the office. He specifically testified that Seafarers did not destroy any hard-copy documents that mentioned or related to Hunicke.

Seafarers also produced a memorandum by McGee stating that he had destroyed the hard drives pursuant to John Sacco's instructions, as well as the receipt from the Salvation Army confirming the donation. Additionally, Seafarers provided the affidavit of John Sacco, in which he explained that in the spring of 2009, Seafarers purchased 30 new computers, which were distributed among its offices across the country, and two of them were sent to the Houston office. Sacco also stated that he told the port agents at all of Seafarers's offices,[3] including McGee, that they could discard or donate old computers but only after destroying the hard drives and memory boards to protect the company's confidential information.

Despite receiving this information in June of 2010, Hunicke made no further mention of the computer issue until May 10, 2011, when Patterson emailed Flynn and explained that unless Seafarers had backed up of the hard drives, he intended to file a motion for sanctions, exclusion of evidence, and a spoliation instruction. Flynn advised that Seafarers opposed the motion, noting that it seemed delayed given that Hunicke had appeared to abandon the issue nearly a year earlier. The following month, Hunicke filed her motion for a spoliation instruction,

---

[3] Seafarers has approximately twenty offices throughout the United States and its territories.

contending the hard drives contained relevant "metadata that would establish when certain documents, which are in dispute, were created," and whether those documents had been altered since her termination.

C

Hunicke has neither identified a single document that she suspects was altered nor has she explained the basis for her suspicions. Further, she fails to explain why she believes the alleged alterations occurred on either of the computers in question, which crashed eleven months before and the month of her termination, respectively. And despite her assertions that the metadata was relevant to the litigation, Hunicke made no effort to gain access to any other hard drives after receiving Seafarers's response to her third request for production in 2009. Finally, Hunicke had the opportunity to depose the other secretaries who typed the relevant documents, but she declined to ask them about the authenticity of the documents. Therefore, Hunicke has failed to show that the hard drives contained information material to this litigation, let alone that Seafarers had reason to know of its materiality in October of 2009.

Hunicke nevertheless maintains that she is entitled to the presumption and cites Justice Baker's concurring opinion in *Trevino* for support: "Generally, when a party has destroyed evidence intentionally or in bad faith, the evidence was relevant and harmful to the spoliating party's case. Absent evidence to the contrary, the trial court could find relevancy solely based on this fact." 969 S.W.2d at 958 (Baker, J., concurring). In this case, however, there is no evidence that Seafarers's destroyed material evidence intentionally or in bad faith. McGee discarded two broken computers around the same time the office received two new computers from headquarters, and he was instructed to destroy the hard drives before discarding the computers to protect the confidentiality of any information

8

that may have been electronically stored on the hard drives.

As explained above, Hunicke has failed to provide any indication that the hard drives were material to this litigation. Although she subsequently insists that "[a]ll record of Hunicke's employment, her twenty-three year career with the Union, vanished" when McGee destroyed the hard drives, she provides no factual basis to support this assertion, which is directly contradicted by the undisputed testimony that Seafarers retained hard copies of all documents relating to Hunicke and by the fact that Seafarers produced those documents during discovery.

In sum, Hunicke failed to establish her entitlement to a spoliation-presumption instruction because she presented no evidence that the hard drives were material to this litigation. Therefore, the trial court did not abuse its discretion by denying her motion, and we overrule Hunicke's first issue.

III

In her second issue, Hunicke argues the trial court erred by granting a partial summary judgment in favor of Seafarers with respect to her retaliation claim because any missing element of a prima facie case should have been established through a spoliation instruction. Because we overruled her first issue, we similarly overrule her second.[4]

IV

In Seafarers's second motion for summary judgment, it argued Hunicke's sexual-harassment claim was barred by limitations because (1) her civil pleading alleging this cause of action was not filed within two years of her administrative

---

[4] Hunicke contends that "in her response to the motions for summary judgment [] she supplied all the elements of a prima facie case for retaliation." But because she provides no discussion or analysis to support this conclusory statement, she has not properly presented for our review the issue of whether, without the spoliation presumption, there is more than a scintilla of evidence to preclude summary judgment. *See* Tex. R. App. P. 38.1(i).

complaint, and (2) alternatively, she failed to provide evidence that any act contributing to the claim occurred within the 180-day period preceding her administrative complaint. The trial court granted Seafarers's motion without specifying the grounds for its ruling. On appeal, Hunicke argues the trial court erred because the relation-back and continuing-violation doctrines apply and therefore her claim was not subject to a limitations defense on either basis.

A

A defendant moving for summary judgment on an affirmative defense has the burden of establishing each element of its defense as a matter of law. *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003); *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996). When, as here, a trial court's order granting summary judgment does not specify the grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

The Act prohibits two types of sexual-harassment discrimination: quid pro quo and hostile work environment. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 n.5 (Tex. 2004). Hunicke's sexual-harassment claim implicates the latter. Pursuant to section 21.202 of the Act, "[a] complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code § 21.202(a). This time requirement is mandatory and jurisdictional. *Specialty Realtors, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam). The Act also requires a plaintiff to file suit within two years after the plaintiff files an administrative charge of discrimination. Tex. Lab. Code § 21.256.

Under section 16.068 of the Civil Practice and Remedies Code, if an amended pleading asserts additional causes of action based on the same transaction or occurrence that formed the basis of the claims made in the original pleading, the amended pleading relates back to the date of the original filing. *See* Tex. Civ. Prac. & Rem. Code § 16.068; *Lexington Ins. Co. v. Daybreak Express, Inc.*, 393 S.W.3d 242, 244 (Tex. 2013) (per curiam). Accordingly, if the additional cause of action was timely when the original petition was filed, it is not subject to a limitations defense. *See SJW Prop. Commerce, Inc. v. Sw. Pinnacle Props., Inc.*, 328 S.W.3d 121, 145 (Tex. App.—Corpus Christi 2010, pet. denied) ("Section 16.068 is a tolling statute that stops the clock at the time that the original petition is filed, if filed within the limitations period, but cannot toll a time period already expired.").

B

We first address whether Labor Code section 21.256 barred the amended pleading. Hunicke argues that it did not because her amended pleading relates back to her original petition, which was filed within two years of her administrative complaint. Seafarers argues the amended pleading does not relate back because "[w]hen a cause of action is dismissed and later refiled, limitations are calculated to run from the time the cause of action accrued until the date that the claim is refiled." *Clary Corp. v. Smith*, 949 S.W.2d 452, 459 (Tex. App.—Fort Worth 1997, writ denied). "This is because a dismissal is equivalent to a suit never having been filed; thus, the statute of limitations is not tolled for any new pleading filed." *Id.*

In *Clary*, two defendants filed a pleading in which they each asserted counterclaims against the plaintiff. *Id.* at 458. Because each defendant alleged damages amounts that exceeded the court's jurisdiction, the trial judge dismissed their claims for want of jurisdiction. *Id.* at 459. The defendants subsequently

11

attempted to reassert their claims in an "amended" pleading, which they filed after the applicable statute of limitations expired. *Id.* The court of appeals explained that "a dismissal is equivalent to a suit never having been filed; thus, the statute of limitations is not tolled for any new pleading filed." *Id.* Therefore, it was as if they had never filed suit, and "the 'amendment' did not relate back to the date of the original counterclaim; instead, it was a new lawsuit because it was made post-dismissal." *Id.*

The facts of this case, however, are distinguishable: Hunicke asserted three claims on her original petition, and she dropped just one of them. It is clear from the fact that the action continued based on her original petition that her partial voluntary dismissal did not put Hunicke in the position of a party who had never filed suit. Because the petition remained valid, Hunicke's subsequent petition was an amended rather than a new pleading. Accordingly, it relates back to her original petition which was filed well within the two-year statute of limitations set out in section 21.256.

C

We must now determine whether Hunicke's sexual-harassment claim was nevertheless barred by Labor Code section 21.202(a), which requires a complainant to file an administrative complaint within 180 days of the allegedly discriminatory act.

Under the continuing-violation doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2009); *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 41–42 (Tex. App.—Austin 1998, pet. denied) . The goal of the continuing-violation doctrine is to

12

"accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely." *Pegram*, 361 F.3d at 279 (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001) (internal quotation marks omitted)). For example, because a hostile-work-environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice, it does not matter for the purposes of the statute of limitations that some of the component acts of the hostile work environment fall outside the statutory time period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The charge "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122. Discrete discriminatory acts such as termination, failure to promote, denial of transfer, or refusal to hire are not actionable if time barred, even when they are related to acts alleged in timely filed charges. *Id.* at 113–14.

During Hunicke's deposition on March 26, 2010, she testified that from the time she started working at Seafarers until the time she was fired, McGee would stand in front of her desk and scratch his crotch "all the time." Hunicke also explained that although employees could usually wear jeans to work, they occasionally had to dress up when important people would be in the office. She testified that whenever she wore dresses, specifically in 2008, McGee would tell her that she looked sexy and that she "should be in a Leggs commercial." Similarly, she testified that when she wore dresses, McGee "would go like he's fixing to grab [her], but he did not grab." In Hunicke's affidavit, dated December 29, 2011, she specified that between September 2008 and January 2009, McGee

sexually harassed her by continuing to make comments about her legs; continuing to reach out toward her as if he were going to pinch her buttocks; continuing to grab his crotch and massage his genitals in front of her; and continuing to stand in front of her while she was seated, bringing his genitals close to her face.[5]

Seafarers insists that Hunicke failed to demonstrate that an act contributing to the alleged hostile work environment occurred within the limitations period, arguing incidents that "cannot be dated precisely by Hunicke . . . cannot provide a basis for an actionable harassment claim." This assertion, however, is false. A claim of hostile work environment implicates a continuous and ongoing pattern of harassment, rather than a specific incident, the occurrence of which can be precisely dated. *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998). "While dates and times may lend credibility to the plaintiff's case—and their lack may seriously undermine it—they are not, as a matter of law, a prerequisite to recovery." *Id.* at 240–41.

Seafarers also contends the affidavit should be disregarded because a party cannot file an affidavit contradicting her own deposition testimony for the purpose of creating a "sham" fact issue to avoid summary judgment. *See Farroux v. Denny's Rests., Inc.*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Specifically, Seafarers contends Hunicke's affidavit clearly contradicts her response to Seafarers's first motion for summary judgment in which she admitted, "The facts surrounding the claims of sexual harassment while powerful, are barred by limitations as the most egregious acts occurred outside the limitations period." Although this statement was in a pleading rather than in a deposition, it is well settled that assertions of fact in the live pleadings of a party are regarded as

---

[5] Hunicke acknowledges that McGee was out of the office due to a knee injury from late September 2008 until the end of the year. Nevertheless, he was in the office during part of the limitations period, which began on September 7, 2008.

14

formal judicial admissions so long as they are not pleaded in the alternative. *Holy Cross Church Of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001). Hunicke's statement that her claim was barred by limitations, however, is not a factual assertion. It is a legal conclusion based on stated facts. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) ("[T]he question of when these causes of action accrued determines whether the statute of limitations has run. Generally, when a cause of action accrues is a question of law."). As such, it does not fit within the definition of a judicial admission. In contrast, Hunicke's statement that "the most egregious acts" contributing to her sexual-harassment claim occurred more than 180-days before she filed her complaint is a factual assertion. Nevertheless, it is not clearly contradicted by her affidavit, in which she testifies that certain acts occurred within the limitations period but does not testify that those were among the "most egregious" acts contributing to her claim. Because we can infer from this evidence that at least one act contributing to Hunicke's sexual-harassment claim occurred during the limitations period, she has presented a fact issue. *See Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988) ("[I]f conflicting inferences may be drawn from a deposition and from an affidavit filed by the same party in opposition to a motion for summary judgment, a fact issue is presented.") (citing *Gaines v. Hamman*, 358 S.W.2d 557, 562 (Tex. 1962)).

Accordingly, we conclude the trial court erred by granting partial summary judgment on Hunicke's sexual-harassment claim on the basis of limitations, and we sustain her third issue.[6]

---

[6] Because Seafarers did not argue in its motion for summary judgment that Hunicke failed to present sufficient evidence to establish the prima facie elements of sexual-harassment, we express no opinion on whether summary judgment would have been proper on that basis.

\* \* \*

We conclude that the trial court did not err by denying Hunicke's request for a spoliation-presumption instruction or by granting Seafarers's motion for summary judgment as to her retaliation claim, but it did err by disposing of Hunicke's sexual-harassment claim on summary judgment on the basis of limitations. Accordingly, we affirm in part, reverse in part, and remand this cause of action to the trial court for further proceedings consistent with this opinion.

/s/    Jeffrey V. Brown
Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.

16